[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Shirley P. Sherman, commenced this action seeking a dissolution of the parties' marriage on the ground of irretrievable breakdown, alimony, an equitable distribution of the parties' property and other relief. The defendant husband, Donald B. Sherman, filed an answer admitting that the marriage had broken down irretrievably. He also filed a cross-complaint seeking a dissolution of the marriage, an equitable division of the parties' real and personal property and other relief.
Both parties appeared by counsel at the trial, and each testified. The parties submitted financial affidavits and oral claims for relief. From the testimony and documentary evidence, the court finds the following facts.
The wife, whose birth name was Shirley Peabody, married the defendant husband on August 10, 1968, at Middletown, Rhode Island. She has resided continuously in the State of Connecticut for at least one year before the filing of her complaint, which was on April 13, 1993. All statutory stays have expired, and this court has jurisdiction. CT Page 9863
The parties had two children who are issue of the marriage, Ken, who is now age 22 and a daughter, who is now age 20. No other minor children were born to the wife since the date of the marriage. Neither party is a recipient of public assistance.
The wife is 48 years of age and is in good health. She received a bachelor's degree in 1968, with a major in religion, and a minor in sociology. She also took graduate and undergraduate level education courses over a period of time after her college graduation, mostly while she held teaching and substitute teaching jobs in public schools.
She now holds down two part-time jobs, one for a church as a "commissioned" minister of christian education, and the other for a conference of churches. As such, she is unable to perform marriages or other sacraments. However, she has continued with post-graduate religious education, and hopes and plans to be ordained as a minister. She expects her course of study and training to take about four years and believes that she must forgo her church part-time job during the first two years, and because of the nature of her study requirements during the second two years, believes she will have to then give up the other job entirely.
The husband is 49 years of age, a high school graduate and in good health. He retired from the United States Navy in 1988 as an E-9 (the highest grade which may be held by an enlisted man) and has worked for Electric Boat as a technical writer for the past three and one-half years. During the period between his discharge and his present employment, he was employed briefly as a professional photographer, and later worked as a self-employed photographer. Photography has been his avocation for a long time.
The husband was 24 and the wife 23 when the parties were married. The husband had been in the Navy for about six years at the time of their marriage. The wife was aware of the duties of a Navy wife and shouldered all of the responsibilities of one during the early years of the marriage when the husband was often out to sea. She learned in the early 1980s, about six years after it occurred, that the husband had committed a sexual act upon their daughter when the child was about eighteen months old. What followed was a period of counseling and therapy. During the course of wife's therapy, her therapist, a mandatory CT Page 9864 reporter, reported the abuse to the Department of Children and Youth Services (DCYS). The incident was also reported to the husband's command but had no discernible effect on his Naval career.
The parties stayed together until January 1993, and there is no doubt that the husband's acts with the child had a great impact on the parties' marriage, and this was certainly a substantial factor in its ultimate breakdown. Also a substantial factor in the breakdown was the wife's church and religion-related activities, which caused her to spend much time out of the home. The wife herself conceded this, as the husband had no interest in these activities and did not wish to become a part of them. He also begrudged the wife her time away from the home in pursuit of her church-related activities. The wife characterizes the husband as very controlling and dominating and didn't feel entirely free when pursuing her course of action. The husband did not support her religious education or associated activities monetarily, and she paid for them out of her own earnings. The wife ultimately decided that she could no longer pursue her goal of becoming an ordained minister while she remained married.
In any event, it is clear that the marriage has in fact broken down irretrievably, and there is no reasonable likelihood of reconciliation.
If the wife had left the marriage within a few years after she discovered the sexual abuse perpetrated upon the child by the husband, the court would have no hesitation in determining that such abuse was the chief cause of the marital breakdown. However, the wife remained in the marriage for more than ten years after she learned of the abuse. During this period, it appeared that the parties engaged in all of the outward trappings of a marriage, and there was no evidence whatsoever that they did not share the inward and intimate relationships that are customarily incident to a marriage. Hence, as appalling as the husband's sexual abuse of his child was, the court must find, on the state of the evidence, that neither party bears a larger share of the responsibility of the marital breakdown than the other, and therefore, they must share it equally.
The wife currently enjoys gross income of $465 from both of her jobs and nets a total of $336 per week. She CT Page 9865 anticipates earning from $20,000 to $25,000 per annum when she completes her education and achieves her ordination. She left the family home in January 1993 and maintains an apartment where she lives alone.
The husband earns a gross weekly income of $550 from his Electric Boat job and receives $486 per week gross from his Navy pension and receives a total net income of $731 per week. He believes that due to his low seniority and the pessimistic outlook for the defense industry of which his employer is a part, the stability of his continued employment at his present income is in grave doubt. He presently resides in the family home with his 22-year-old son and pays all of the household expenses, mortgage, taxes, etc.
The parties' financial affidavits reveal that their major asset is the jointly-owned home valued at $165,000, with a mortgage of $37,000, leaving an equity of $128,000. They also have a certificate of deposit in the amount of $25,000 which is in joint names; the wife's 1991 Plymouth automobile, which is fully paid for and valued at $7,750 on husband's affidavit, $5,500 on wife's; and the wife's pension, which she values at $1,225. They finally show a 1984 Chevrolet suburban vehicle (unvalued), the husband's 1993 Dodge automobile valued at $12,500, but with minimal equity of $431; and, a travel trailer, log splitter, chain saws, tractor and photography equipment, all in the aggregate valued by husband at $8,000.
The house is a seven-room colonial-style home in North Stonington and was built in 1972, almost entirely by the husband on a three-acre lot. Later, the house was expanded by him to include a sun porch and workroom/photograph studio. The wife also contributed to the home's completion by painting, papering and handcrafting curtains and the like. The parties also purchased 31 acres adjoining the original house lot, so now the property comprises 34 acres. Although the wife worked almost throughout the marriage, and taught full time in the New London school system for the first two years, and now holds two part-time jobs, the remainder of her out-of-home employment appeared to be part time. Hence, as the husband maintained steady, full-time employment with the Navy until his retirement in 1988, and from 1989 to the present time with Electric Boat, and made all of the mortgage, tax, insurance and utility payments, the court concludes that the husband's monetary contributions to the marital home and marriage were greater than those of the wife. CT Page 9866 However, during the marriage the wife was the homemaker and primary caretaker of the children. In addition to the earnings from her part-time employment, much of which was contributed by her to the needs of the children and the parties' household, the wife also made nonmonetary contributions such as cook, chauffeur, shopper, working in the husband's photography business, and the like. The court must recognize those nonmonetary contributions to the parties' marriage, which enabled the husband to maintain the home and his Naval career and obtain his pension, which provides income to him for the remainder of his life. See O'Neill v. O'Neill, 13 Conn. App. 300, cert. denied, 207 Conn. 806 (1988).
The court concludes therefore, that the parties' respective contributions to the marriage, monetary and nonmonetary, (excepting the wife's inheritance from her mother, later discussed) were approximately equal.
The wife inherited about $60,000 from her mother's estate sometime in 1987. The money was used by the parties in a number of ways, including church contributions of about $1,500, payment of $1,500 toward wife's therapy and books, gifts to each child totalling $3,000, and $5,000 for a used car. Also, the parties treated themselves to a new Plymouth Voyager and camper with which they went on a six-week vacation trip across the country (also paid for from the inheritance) and some landscaping improvements to the home which the wife claims were for husband's photography backdrops. The wife's car loan was also paid off, and what essentially remains from the inheritance are the following: the $25,000 certificate of deposit, the 1984 Suburban (for which the Voyager was traded) and the camper. The wife proposes that the husband keep the vehicle and camper and that she be assigned the balance of the certificate of deposit of $25,000, it being directly traced to her inheritance.
The court views the husband's present earning ability and vocational skills as superior to that of the wife; however, the court believes that if the wife follows through on her educational plans, which appears very likely, that their future earning capacities and abilities to acquire capital assets and income are about equal. The husband has also professed a desire to remain in the home, to which the wife does not object, although she claims one-half of its equity, most of which she desires in cash, together with one-half of 20/26ths of the husband's monthly pension benefit. This claim derives from the CT Page 9867 so-called marital coverture period, as the parties were married during 20 of the husband's 26 years of military service upon which his pension benefits rest. The husband opposes any division or distribution of his pension benefits, and proposes that he pay the wife nonmodifiable periodic alimony for a fixed period of time, specifically ten years.
The court has considered all of the testimony and evidence and findings in the light of the factors in General Statutes 46b-62, 46b-81 and 46b-82 and orders as follows:
A decree dissolving the marriage may enter on the ground of its irretrievable breakdown.
The wife shall convey by quitclaim deed to the husband, all of her right, title and interest in and to the premises at 209 Denison Hill Road, North Stonington, Connecticut. This conveyance shall include the dwelling and house lot, the additional acreage purchased, and all appurtenances thereto. Simultaneously, the husband shall execute and deliver to the wife a promissory note secured by a second mortgage on said premises, in the amount of $60,000, bearing interest at the rate of five (5%) percent per annum. The principal and interest shall be payable in equal monthly payments of $350.76, with the first such monthly payment on January 1, 1994, and on the first of each month thereafter, and the unpaid principal balance and any accrued interest thereon shall be immediately due and payable on the first to occur of the following events: husband's death or remarriage, his ceasing to reside there as his principal residence, his living together with another person within the meaning of General Statutes 46b-86(b), his sale of the mortgaged premises or June 1, 1999. Said promissory note shall also contain a thirty-day default clause, provide for an increase in the interest rate to seven (7%) percent per annum and for attorney's fees in the event of default, and provide that the maker shall name the wife as loss payee on his homeowner's insurance policy on said premises, and furnish evidence of said designation to her.
The husband shall transfer to wife by Qualified Domestic Relations Order (QDRO) or such other appropriate instrument as may be necessary to effect this transfer under the Uniformed Services Former Spouses' Protection Act or other applicable law, the sum of $180 per week from his Navy retirement plan. The wife shall, if permitted under the plan, CT Page 9868 designate the husband as survivor beneficiary of that portion of his benefit transferred to her, the intent being, that if she predeceases him, such benefit shall be restored to him. The court shall retain jurisdiction over this portion of the decree for the purpose of modification, as may be necessary to conform the order to applicable provisions of federal law relating to military retirement plans.
The wife shall take, have and own, free of any claims of the husband, the following tangible and intangible personal property: her 1991 Plymouth automobile; her jewelry; her checking and savings accounts, the sum of $20,000 from the certificate of deposit, her pension fund and Metropolitan Life Insurance Company policy shown on her financial affidavit, the furniture, furnishing and personal items now in her possession, and all of the items shown on `Joint Exhibit' A.
The husband shall take, have and own, free of any claims of the wife, the following tangible and intangible personal property: the 1993 Dodge and 1984 Chevrolet motor vehicles; his checking and savings accounts, $5,000 from the certificate of deposit, his Metropolitan Life Insurance Company policy (except as limited by that portion hereafter set out to wife), the camper, log splitter, chain saws, tractor and photography equipment, and all of the household furniture and furnishings and household items in the Denison Hill Road premises, excepting the items set out to wife in Joint Exhibit A. If the husband desires to make copies of any other genealogical materials or wedding album photographs he may do so within sixty days hereof, and the parties shall equally share the expense thereof, provided wife's share shall not exceed the sum of $300. It is also ordered that upon the death of the wife, the genealogical books shall belong to the parties' son, and the wedding album to the parties' daughter.
The husband shall be solely responsible for and pay the first mortgage and real estate taxes on the Denison Hill Road premises, and save the wife harmless therefrom, and each shall pay the liabilities on their respective financial affidavits, and save the other harmless therefrom. In the event there is any income tax liability accruing to the parties as a result of interest earned on the certificate of deposit during the calendar year 1993, they shall apportion such liability two-thirds to the wife, one-third to the husband. CT Page 9869
The husband shall irrevocably designate the wife as beneficiary of $50,000 of the Metropolitan Life Insurance Company policy shown on his financial affidavit, until the first to occur of the following: wife's death or remarriage or husband's reaching age 65. The husband shall execute and deliver a written authorization to the wife directed to the insurance company which shall enable her to directly determine the good standing of said policy.
The wife shall be permitted to convert for her benefit husband's present job-related and military `Champus' health insurance coverage, and she shall pay the premiums thereon, if any. The husband shall cooperate to effect the provisions of this order and shall promptly execute and deliver any and all instruments necessary or incidental to do so. No alimony is awarded to either party and each shall pay his or her own attorney's fees.
Teller, J.